**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CAUSEWAY AUTOMOTIVE, LLC, CONTI CAUSEWAY FORD, INC., CAUSEWAY NISSAN, LLC, and CAUSEWAY HYUNDAI, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY, ABC CORPS. 1-5,<br><br>Defendants. | Civil Action No. 20-8393 (FLW) (DEA)<br><br>**OPINION** |

**<u>WOLFSON, Chief Judge</u>:**

Plaintiffs Causeway Automotive, LLC, Conti Causeway Ford, Inc., Causeway Nissan, LLC, and Causeway Hyundai, LLC ("Plaintiffs") initially filed this insurance coverage action in the Superior Court of New Jersey, Law Division, Ocean County, seeking coverage for losses sustained as a result of the 2019 novel coronavirus ("COVID-19") pandemic. On July 7, 2020, Defendant Zurich American Insurance Company removed the action to this Court pursuant to 28 U.S.C. § 1446, based on the diversity of the parties. Presently before the Court is Defendant's Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendant's Motion is **GRANTED**.[1]

---

[1] The Court's decision granting Defendant's Motion to Dismiss does not conflict with two previous Opinions in which this Court chose to decline jurisdiction under the Declaratory Judgment Act (the "DJA") and remand to state court two matters related to insurance coverage for business interruption losses caused by COVID-19. *See Mark Daniel Hosp., LLC v. AmGUARD Ins. Co.*, ___ F. Supp. 3d ___, 2020 WL 6111039 (D.N.J. Oct. 16, 2020); *Mattdogg, Inc. v.*

**I.     BACKGROUND**

Plaintiffs are automobile dealers that operate a family of automobile dealerships, known as the Causeway Family of Dealerships, located in Manahawkin, New Jersey.  (Compl. ¶ 2.) Plaintiffs sell new, pre-owned and demo vehicles to the general public. (*Id.*) Defendant issued to Plaintiffs Policy No. ADM 8625381 00, for the period of Mach 1, 2020 to March 1, 2021 (the "Policy"). (*Id.* ¶ 14.) The Policy provides that Defendant "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (*Id.* ¶ 16.) The Policy additionally provides coverage for business income and extra expense "caused by action of civil authority." (*Id.* ¶¶ 22–23.)

On March 9, 2020, New Jersey Governor Philip D. Murphy issued Executive Order 103, which declared a state of emergency and public health emergency in response to the COVID-19 pandemic.  (*Id.* ¶ 10.)  Thereafter, on March 21, 2020, Governor Murphy issued Executive Order 107, "which required the closure brick-and-mortar premises of all non-essential retail businesses."

---

*Philadelphia Indem. Ins. Co.*, No. 20-6889, 2020 WL 6111038 (D.N.J. Oct. 16, 2020).  First, unlike in *Mark Daniel Hospitality* and *Mattdogg*, Plaintiffs here did not move to remand, nor do they request that the Court decline to exercise jurisdiction under the DJA.  Further, in *Mark Daniel Hospitality* and *Mattdogg*, I observed that it was better to permit the New Jersey State Courts to resolve, in the first instance, questions regarding insurance coverage in the wake of the COVID-19 pandemic.  *See Mark Daniel Hosp.*, 2020 WL 611039, at *5.  Since I issued those decisions, however, the New Jersey State Courts have begun to rule on these matters, providing important guidance to the federal courts.  Indeed, since the issuance of my decision in *Mattdogg*, the State Court Judge in that matter has issued an Order granting defendants' motion to dismiss.  *See Mattdogg, Inc. v. Phil. Indem. Ins. Co.*, No. L-820-20, 2020 WL 7702634, at *4 (N.J. Super. Ct. Law Div. Nov. 17, 2020).  The Court's analysis here is thus guided by that decision and other decisions of the New Jersey State and federal courts.  *See id.*; *Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co.*, No. L-2629-20, 2020 WL 7422374, at *9 (N.J. Super. Ct. Law Div. Nov. 5, 2020); *see also 7th Inning Stretch LLC v. Arch Ins. Co.*, No. 20-8161, 2021 U.S. Dist. LEXIS 11326, at *5 (D.N.J. Jan. 19, 2021); *Boulevard Carroll Entertainment Grp., Inc. v. Fireman's Fund Ins. Co.*, No. 20-1171, 2020 WL 7338081, at *2 (D.N.J. Dec. 14, 2020); *N&S Restaurant LLC v. Cumberland Mut. Fire Ins. Co.*, ___ F. Supp. 3d ___, 2020 WL 6501722, at *4 (D.N.J. Nov. 5, 2020).

(*Id.* ¶ 11.) Since the issuance of Executive Order 107, Plaintiffs allege that they "have been unable to operate their dealerships in the normal course of business." (*Id.* ¶ 12.) Specifically, Plaintiffs claim that because the public is prohibited from accessing their buildings, showrooms, and premises, Plaintiffs have lost "customers, patrons, vendors, suppliers, supplies and other essential physical materials necessary to operate" their dealerships.[2] (*Id.*)

Relevant here, the Policy contains Civil Authority Coverage. Specifically, the Policy provides that

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Declaration of Phillip C. Silverberg ("Silverberg Decl."), Ex. 4.) Business Income is defined under the Policy as "[n]et income . . . that would have been earned or incurred" and "[c]ontinuing normal operating expenses incurred, including payroll." (*Id.*) Extra Expense is defined as "necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a

---

[2]  The Court notes that Plaintiffs were permitted to continue providing certain services pursuant to Executive Order 107. Specifically, automobile dealerships were deemed "essential retail businesses" but "only to provide auto maintenance and repair services." N.J. Exec. Order No. 107 (March 21, 2020), https://nj.gov/infobank/eo/056murphy/pdf/EO-107.pdf.

3

Covered Cause of Loss." (*Id.*)

On May 8, 2020, Plaintiffs submitted a claim under the Policy for its losses. (*Id.* ¶ 26.) Thereafter, on May 18, 2020, Defendants denied the claim, citing an "Exclusion of Loss Due to Virtus or Bacteria" Endorsement contained in the Policy. (*Id.* ¶ 27.) The "Exclusion of Loss Due to Virtus or Bacteria" (the "Virus Exclusion") states that Defendant "will not pay for loss or damage caused by or resulting from any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease." (Silverberg Decl., Ex. 3.) The Virus Exclusion "applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority." (*Id.*)

On May 26, 2020, Plaintiffs filed a Complaint against Defendant in State Court, seeking a declaration that "the business income interruption loss suffered by Plaintiffs as a result of . . . Governor Murphy's Executive Orders No. 103 and 107 is covered under the Civil Authority coverage provided for in the Policy" and that the Virus Exclusion is contrary to New Jersey Public Policy and "not otherwise applicable to any of the business interruption loss suffered by Plaintiffs as a result of the COVID-19 pandemic." (Compl. at 10.) Defendant removed the action to this Court pursuant to 28 U.S.C. § 1446 based on the diversity of the parties. This motion followed.

## II.  STANDARD OF REVIEW

### a. Rule 12(b)(6) Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the

4

complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and quotations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations

omitted).  Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quotations omitted).  Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotations and brackets omitted).

### b. Interpretation of Insurance Contracts Under New Jersey Law

Under New Jersey law, the determination of "the proper coverage of an insurance contract is a question of law."[3] *Buczek v. Cont'l Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004) (citing *Atl. Mut. Ins. Co. v. Palisades Safety & ns. Ass'n*, 364 N.J. Super. 599, 604 (App. Div. 2003)).  "An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." *Flomerfelt v. Cardiello*, 202 N.J. 432, 441 (2010).  However, because insurance policies are contracts of adhesion, they "are subject to special rules of interpretation," *Longobardi v. Chubb Ins. Co. of N.J.*, 121 N.J. 530, 537 (1990), and "courts must assume a particularly vigilant role in ensuring their conformity to public policy and principles of fairness." *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 175 (1992); *see Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 594 (2001) ("We give special scrutiny to insurance contracts because of the stark imbalance between insurance companies and insureds in their respective understanding of the terms and conditions of insurance policies.").  In a dispute over the interpretation of an insurance contract, the "burden is on the insured to bring the claim within the basic terms of the policy." *Reliance Ins. Co. v. Armstrong World Indus., Inc.*, 292 N.J. Super. 365, 377 (App. Div. 1996).  However, where, as here, "the insurance carrier claims the matter in dispute falls within exclusionary provisions of the policy, it bears the burden of establishing that

---

[3]     The parties do not dispute that New Jersey law applies to this matter.

claim." *Rosario ex rel. Rosario v. Haywood*, 351 N.J. Super 521, 530 (App. Div. 2002).

In New Jersey, the court's function in construing policies of insurance, as with any other contract, "is to search broadly for the probable common intent of the parties in an effort to find a reasonable meaning in keeping with the express general purposes of the policies." *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 271 N.J. Super. 409, 416 (App. Div. 1994). In most cases, the best indication of the parties' reasonable expectations lies in the language of the insurance policy itself, *Moessner*, 121 F.3d at 903, and thus, ordinarily, "the words of an insurance policy are to be given their plain, ordinary meaning." *Zacarias*, 168 N.J. at 595. In that regard, "[w]here the express language of the policy is clear and unambiguous, 'the court is bound to enforce the policy as it is written.'" *Rosario*, 351 N.J. Super. at 530 (quoting *Royal Ins.*, 271 N.J. Super. at 416); *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 238 (2008) ("If the language is clear, that is the end of the inquiry."). This governing principle precludes courts from writing "'for the insured a better policy of insurance than the one purchased.'" *Gibson v. Callaghan*, 158 N.J. 662, 670 (1999) (citation omitted).

Additionally, in the context of an insurance policy, "[e]xclusionary clauses are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.'" *Flomerfelt*, 202 N.J. at 441 (quoting *Princeton Ins. Co. v. Chunmuang*, 151 N.J. 80, 95 (1997)). Because the burden is on the insurer to bring the case within an exclusion, *Chunmuang*, 151 N.J. at 95, "exclusions are ordinarily strictly construed against the insurer, and if there is more than one possible interpretation of the language, courts apply the meaning that supports coverage rather than the one that limits it." *Flomerfelt*, 202 N.J. at 442 (internal citation omitted). Nonetheless, "[i]f the words used in an exclusionary clause are clear and unambiguous, 'a court should not engage in a strained construction to support the imposition of liability.'" *Id.*

(quoting *Longobardi*, 121 N.J. at 537).  In that regard, courts cannot "disregard the 'clear import and intent' of a policy exclusion," *Am. Motorists Ins. Co. v. L–C–A Sales Co.*, 155 N.J. 29, 41 (1998) (citation omitted), and "[f]ar–fetched interpretations of a policy exclusion are insufficient to create an ambiguity requiring coverage." *Essex Ins. Co. v. New Jersey Pan–African Chamber of Commerce & Indus., Inc.*, No. A–1237–14T3, 2017 WL 4051726, at *3 (N.J. Super. Ct. App. Div. Sept. 14, 2017).  "Rather, courts must evaluate whether, utilizing a 'fair interpretation' of the language, it is ambiguous."  *Flomerfelt*, 202 N.J. at 442 (quoting *Stafford v. T.H.E. Ins. Co.*, 309 N.J. Super. 97, 105 (App. Div. 1998)).

### III.  DISCUSSION

#### a.  Application of the Virus Exclusion to Plaintiffs' Claim

Defendant contends that Plaintiffs' Complaint should be dismissed because Plaintiffs' claim is barred by the Policy's Virus Exclusion.  Specifically, Defendant maintains that coverage for Business Interruption and Civil Authority applies only to Covered Causes of Loss.  As the Virus Exclusion excludes coverage for any "loss or damage caused by or resulting from any virus . . . or other microorganism that induces or is capable of inducing physical distress, illness or disease" and "applies to all coverage under all forms and endorsement that comprise this Coverage Part of Policy, including but not limited to . . . forms or endorsements that cover business income, extra expense or action of civil authority," Defendant argues that Plaintiffs' losses were caused by COVID-19[4] and, therefore, are not covered by the Policy.  Plaintiffs, however, contend that the Virus Exclusion is ambiguous and, therefore, should be interpreted in Plaintiffs' favor.  Even so, Plaintiffs further contend that because the COVID-19 virus was but one cause in a sequence of events that led to their losses, the Virus Exclusion does not apply.

---

4  There is no dispute that COVID-19 is caused by a virus.

8

First, Plaintiffs have not demonstrated that the Virus Exclusion is genuinely ambiguous. A genuine ambiguity exists in an insurance contract "where the phrasing of the policy is so confusing that the average policyholder cannot make out of the boundaries of coverage." *Lee v. Gen. Acc. Ins. Co.*, 337 N.J. Super. 509, 513 (App. Div. 2001); *see also Zacarias*, 168 N.J. at 601 ("[I]n enforcing an insurance policy, courts will depart from the literal text and interpret it in accordance with the insured's understanding . . . if the text appears overly technical or contains hidden pitfalls, cannot be understood without employing subtle or legalistic distinctions, is obscured by fine print, or requires a strenuous study to comprehend.") (internal citations omitted)). Nonetheless, "[a]n insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants." *Powell v. Alemaz, Inc.*, 335 N.J. Super. 33, 44 (App. Div. 2000). Where a genuine ambiguity exists, "courts interpret the contract to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning." *Zacarias*, 168 N.J. at 595; *see Gibson*, 158 N.J. at 671 ("[I]nsurance polices must be construed to comport with the reasonable expectations of the insured.").

Plaintiffs argue that the Virus Exclusion is ambiguous because it is susceptible to multiple meanings. In that regard, Plaintiffs contend that a reasonable interpretation of the Virus Exclusion is that the Policy does not provide coverage caused by a virus actually present at the insured premises or that has infected the insured's employees. (Opp. at 7.) However, simply presenting two conflicting meanings of a provision does not render it ambiguous. *See Powell*, 335 N.J. Super. at 44. Indeed, I do not find the Virus Exclusion to be ambiguous in any way. *See Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co.*, No. L-2629-20, 2020 WL 7422374, at *9 (N.J. Super. Ct. Law Div. Nov. 5, 2020) (finding similar virus exclusion "to be clear and unambiguous"). The Virus Exclusion plainly provides that Defendant will not cover any loss caused by "any virus . . .

9

or other microorganism that induces or is capable of inducing physical distress, illness, or disease." (Silverberg Decl., Ex. 3 § B.) The provision in no way suggests that the virus must be present at the insured property for the exclusion to apply. Indeed, to accept Plaintiffs' interpretation would require the Court to add additional language that does not appear in the Policy. Plaintiffs' presentation of potential interpretations of that clause does not render it ambiguous or otherwise unclear.[5]

Next, Plaintiffs attempt to save their claim by contending that the Virus Exclusion does not apply because their losses were not caused by COVID-19 but, rather, by Governor Murphy's Executive Orders which required the closure of certain aspects of Plaintiffs' business.[6] Where, as here, "there is a conflict as to whether, for coverage purposes, losses should be considered to be

---

[5] Notably, other courts that have considered similar virus exclusions have found their terms "to be unambiguous and clearly applicable 'to COVID-19, which is caused by a coronavirus that causes physical illness and distress.'" *Humans & Resources, LLC v. Firstline Nat'l Ins. Co.*, No. 20-2152, 2021 WL 75775, at *8 (E.D. Pa. Jan. 8, 2021) (quoting *Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Amer.*, ___ F. Supp. 3d ___, 2020 WL 7024287, at *3 (E.D. Pa. Nov. 30, 2020)); *see also Pez Seafood DTLA, LLC v. Travelers Indem. Co.*, No. 20-4699, 2021 WL 234355, at *7 (C.D. Cal. Jan. 20, 2021) ("[T]he Virus Exclusion clearly and unambiguously applies, as courts applying similar virus exclusions to COVID-19 have consistently found."); *AFM Mattress Co., LLC v. Motorists Commercial Mut. Ins. Co.*, ___ F. Supp. 3d ___, 2020 WL 6940984, at *4 (N.D. Ill. Nov. 25, 2020) (finding "no ambiguity in the language" of insurance policy's virus exclusion").

[6] Unlike other cases that have considered insurance coverage in the wake of the COVID-19 pandemic, the Virus Exclusion at issue does not contain an anti-concurrent clause. Anti-concurrent clauses are "exclusionary language designed to avoid the 'efficient proximate cause doctrine.'" *See N&S Restaurant LLC v. Cumberland Mut. Fire Ins. Co.*, ___ F. Supp. 3d ___, 2020 WL 6501722, at *4 (D.N.J. Nov. 5, 2020). For example, the virus exclusion in *N&S Restaurant* stated that "[Defendant] will not pay for loss or damage caused *directly or indirectly* by . . . [a]ny virus." *Id.* at *3 (emphasis added). Such virus exclusions have been widely enforced by the federal courts. *See id.* (collecting cases); *see also Boulevard Carroll Entertainment Grp., Inc. v. Fireman's Fund Ins. Co.*, No. 20-1171, 2020 WL 7338081, at *2 (D.N.J. Dec. 14, 2020) (enforcing policy's virus exclusion, which had an anti-concurrent clause, "[b]ecause the Stay-at-Home Orders were issued to mitigate the spread of the highly contagious novel coronavirus, Plaintiff's losses are tied inextricably to that virus and are not covered by the Policy"); *Wilson v. Hartford Casualty Co.*, ___ F. Supp. 3d ___, 2020 WL 5820800, at *7 (E.D. Pa. Sept. 30, 2020).

'caused by' an excluded peril, the New Jersey courts employ the efficient proximate cause test, which is sometimes referred to as the Appleman's Rule." *N.J. Transit Corp. v. Certain Underwriters at Lloyd's London*, 461 N.J. Super. 440, 460 (App. Div. 2019). Pursuant to this rule, "if an exclusion 'bars coverage for losses *caused by* a particular peril, the exclusion applies *only if* the excluded peril was the efficient proximate cause of the loss.'" *Id.* (quoting *Zurich Am. Ins. v. Keating Bldg. Corp.*, 513 F. Supp. 2d 55, 70 (D.N.J. 2007)). Thus, "[w]here a peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and the final loss, produces the result for which recovery is sought, the insured peril is regarded as the proximate cause of the entire loss." *Id.* at 460–61 (quoting *Auto Lenders Acceptance Co. v. Gentillini Ford, Inc.*, 181 N.J. 245, 257–58 (2004)). Conversely, a loss may also be covered where the covered cause "ends the sequence of events leading to the loss." *Flomerfelt*, 202 N.J. at 447. Ultimately, however, the pertinent question is not where in the sequence the alleged cause of loss occurred, but what was the predominant cause that produced the loss. *See Franklin Packaging Co. v. Cal. Union Ins. Co.*, 171 N.J. Super. 188, 191 (App. Div. 1979).

Here, Plaintiffs posit that the Executive Orders were the efficient proximate cause of their losses because the Orders were the last act that contributed to those losses. Plaintiffs' argument, however, erroneously focuses on the sequence of events that lead to the issuance of the Executive Orders, as opposed to what, in fact, was the predominant cause of their losses. The Executive Orders were issued for the sole reason of reducing the spread of the virus that causes COVID-19 and would not have been issued but for the presence of the virus in the State of New Jersey. *See 7th Inning Stretch LLC v. Arch Ins. Co.*, No. 20-8161, 2021 U.S. Dist. LEXIS 11326, at *5 (D.N.J. Jan. 19, 2021) ("Because the Stay-at-Home Orders were issued to mitigate the spread of the highly

contagious novel coronavirus, Plaintiffs' losses are tied inextricably to that virus and are not covered by the policies."). In fact, Plaintiffs' Complaint acknowledges this connection as it alleges that the Executive Orders were issued "to further protect the health, safety, and welfare of New Jersey residents by, among other things, reducing the rate of community spread of COVID-19." (Compl. ¶ 10.) In that regard, the "but for" cause of Plaintiffs' losses was COVID-19—the Executive Orders and the virus are so inextricably connected that it is undeniable that the Orders were issued because the virus. As one court has aptly explained in enforcing a similar virus exclusion:

> The coronavirus is the peril that caused the government to enact orders restricting business. The virus and the orders are not two equal independent concurrent causes that worked together to cause the loss. The orders are wholly dependent on the virus. The orders, as they so state, were enacted to curtail the spread of the coronavirus and would not have been issued but for the pandemic. Because the orders were the direct result of, caused by, and arose from the prime excluded peril, the exclusion applies to deny coverage.

*Edison Kennedy, LLC v. Scottsdale Ins. Co.*, No. 20-1416, 2021 WL 22314, at *8 (M.D. Fl. Jan. 4, 2021) (footnote omitted).[7]

While there are limited decisions by the New Jersey courts on this issue, at least two New Jersey Courts have determined that

> that a virus, specifically COVID-19, was the cause of the governmental action. Since the virus is alleged to be the cause of the governmental action, and the governmental action is asserted to be the cause of the loss, plaintiff cannot avoid the clear and unmistakable conclusion that the coronavirus was the cause of the alleged damage or loss.

---

[7]   The virus exclusion at issue in *Edison Kennedy* states that "Scottsdale will not pay 'for loss or damage caused by or resulting from any virus . . . that induces or is capable of inducing physical distress, illness, or disease." 2021 WL 22314, at *7. Further, while *Edison Kennedy* arose under Florida law, Florida similarly applies the efficient proximate cause doctrine. *See id.* ("Where one cause or peril discernibly sets another cause or peril in motion, the loss is attributable to the efficient or proximate cause that set all other causes in motion.").

*Mac Prop. Grp. LLC*, 2020 WL 7422374, at *8;[8] *see also Mattdogg, Inc. v. Phil. Indem. Ins. Co.*, No. L-820-20, 2020 WL 7702634, at *4 (N.J. Super. Ct. Law Div. Nov. 17, 2020) ("The Governor issued his executive orders affecting Plaintiff's business as a direct result of COVID-19 . . . and any losses incurred therefrom are squarely within the exclusion."). In fact, other courts that have considered the question of whether an insured's losses were caused by COVID-19 or government stay-at-home orders, have found that COVID-19 is the predominant cause of loss, therefore concluding the virus exclusion foreclosed coverage. *See, e.g.*, *7th Inning Stretch LLC*, 2021 U.S. Dist. LEXIS 11326, at *5 (applying New Jersey law and finding virus exclusion clause, which did not contain anti-concurrent clause, barred coverage for business interruption losses caused by COVID-19 pandemic); *Edison Kennedy*, 2021 WL 22314, at *8; *Chattanooga Prof. Baseball LLC v. Nat'l Cas. Co.*, No. 20-1312, 2020 WL 6699480, at *3 (D. Ariz. Nov. 13, 2020) (rejecting plaintiff's argument that government stay-at-home order caused losses as "[t]here is no allegation in the complaint that absent the pandemic, the government would have been prompted to issue stay-at-home orders or otherwise inhibit access to the ballparks"); *AFM Mattress Co., LLC v. Motorists Commercial Mut. Ins. Co.*, ___ F. Supp. 3d ___, 2020 WL 6940984, at *3 (N.D. Ill. Nov. 25, 2020) ("Plaintiff's argument that its losses occurred because the Indiana and Illinois governmental entities issued shutdown orders, not because of the virus itself, is unpersuasive.").

Further, as Defendant illustrates, even if the Court were to accept Plaintiffs' theory of causation, the Virus Exclusion still precludes coverage. The Policy states that Civil Authority coverage only applies where "*a Covered Cause of Loss* causes damage to property other than

---

[8]   The Court notes that the *Mac Property Group* decision did not specifically discuss application of the efficient proximate cause doctrine because, in that matter, the insurance policy's virus exclusion contained an anti-concurrent cause provision. *See* 2020 WL 7422374, at *8. Even so, the court's discussion on causation is persuasive.

property at the described premises." (Silverberg Decl., Ex. 4, § A.5 (emphasis added).) In other words, for an action of civil authority to be covered under the policy, the action must be taken in response to damage caused by "a Covered Cause of Loss . . . at a property other than property at the described premises." (*Id.*) In that regard, the Policy plainly does not provide coverage for an action of Civil Authority taken in response to a virus, as "damage caused by or resulting from any virus" is not a Covered Cause of Loss under the Policy. (*See id.*; Silverberg Decl., Ex. 3 § A (providing that the Virus Exclusion "applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including . . . forms or endorsements that cover business income, extra expense or action of civil authority")); *see also Mac Prop. Grp.*, 2020 WL 7422374, at *8 ("It therefore does not matter whether the closure of plaintiff's business as a result of governmental orders to prevent the spread of the coronavirus constitutes direct physical damage to covered property, nor whether civil authority coverage can be triggered, since the reason for the exercise of that civil authority was the virus."); *see also Newchops Rest. Comcast LLC v. Admiral Indem.*, ___ F. Supp. 3d ___, 2020 WL 7395153, at *8 (E.D. Pa. Dec. 17, 2020) ("As alleged in the amended complaints, the virus contaminated other properties which caused the civil authorities to issue the orders. If so, the cause of the insureds' losses was the virus, which is specifically excluded as a covered cause of loss.")

Accordingly, because the Court finds that the Virus Exclusion is unambiguous and that COVID-19 was the proximate cause of Plaintiffs' losses, I find that the Virus Exclusion bars coverage.

### b. The Reasonable Expectations of the Parties

Plaintiffs additionally argue that Defendant's Motion should be denied because there are questions of material fact as to Plaintiffs' reasonable expectations of coverage that warrant

discovery. Relatedly, Plaintiffs contend that the Virus Exclusion is contrary to public policy as New Jersey public policy "disfavors a generic 'virus exclusion' for losses suffered by New Jersey business owners" as a result of the COVID-19 pandemic.

It is well-established that "New Jersey courts . . . endeavor to interpret insurance contracts to accord with the objectively reasonable expectations of the insured." *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir. 2006). In that regard, "[t]he New Jersey Supreme Court has 'recognized the importance of construing contracts of insurance to reflect the reasonable expectations of the insured in the face of ambiguous language and phrasing, and *in exceptional circumstances*, when the literal meaning of the policy is plain.'" *Id.* (quoting *Nav-Its, Inc. v. Selective Ins. Co. of Amer.*, 183 N.J. 110, 119 (2005)). The Third Circuit has observed, however, that while "[t]he New Jersey doctrine allowing the reasonable expectations of the insured to override the plain meaning of a policy in exceptional circumstances [is] often stated, [it] has rarely been applied by the New Jersey Supreme Court." *Id.* As such, the Third Circuit has predicted "that the New Jersey Supreme Court would hold that a clear and unambiguous policy exclusion should be applied according to the plain language of the exclusion unless it violates public policy as well as the objectively reasonable expectations of the insured." *Id.* at 237; *see also Abboud v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 450 N.J. Super. 400, 408 (App. Div. 2017) ("Our courts 'have recognized the importance of construing contracts of insurance to reflect the reasonable expectations of the insured in the face of ambiguous language and phrasing, and in exceptional circumstances, when the literal meaning of the policy is plain.'"). The New Jersey Appellate Division has highlighted certain exceptional circumstances that may warrant construing an insurance contract to reflect the reasonable expectations of the insured. For example, "[c]ourts may vindicate the insured's reasonable expectations over the policy's literal meaning 'if the text

15

appears overly technical or contains hidden pitfalls, cannot be understood without employing subtle or legalistic distinctions, is obscured by fine print, or requires strenuous study to comprehend." *Id.* at 409 (quoting *Zacarias*, 168 N.J. at 601). Moreover, the insured's expectations of coverage "must be real" and objectively reasonable. *Id.* at 410.

With these principles in mind, the Court finds no dispute of fact as to whether Plaintiffs' reasonable expectations of coverage warrant overriding the Virus Exclusion. Plaintiffs contend that because the Policy was newly issued, there is a question of fact as to whether Plaintiffs had a reasonable expectation that the Virus Exclusion only applied "if the loss was caused by a virus . . . actually present on the insured premises as opposed to a governor's emergency orders issued in response [to] a public health crisis." (Opp., at 17.) However, the Policy provides commercial coverage to Plaintiffs, a group of presumably sophisticated business entities. As the Court explained above, the language of the Virus Exclusion is plain and unambiguous. While Plaintiffs suggest that the exclusion is susceptible to more than one interpretation, such alleged susceptibility is not sufficient to create ambiguity. *See supra*. Nor does it demonstrate an objectively reasonable expectation of coverage. Indeed, there is no allegation in the Complaint that set forth any facts as to why Plaintiffs would have expected losses caused by COVID-19 to be covered under the Policy. Accordingly, the Court finds that there is no dispute of fact as to whether the reasonable expectations of the insureds warrant setting aside the Virus Exclusion.

Nor have Plaintiffs presented an issue of fact as to whether enforcement of the Virus Exclusion is contrary to public policy. Plaintiffs' only support for their public policy argument is a bill that was introduced in the New Jersey Assembly in March 2020 which proposed that "every policy of insurance . . . be construed to include . . . coverage for business interruption due to global virus transmission or pandemic." (Compl. ¶ 36.) However, it appears that the bill was never voted

on by the legislature. While the bill's proposal may demonstrate the beliefs of some legislators in the State of New Jersey as to what the State's public policy on virus exclusions in commercial insurance policies *should be*, the mere existence of a proposed bill does not demonstrate that public policy, currently, precludes application of virus exclusions in the context of the COVID-19 pandemic.[9] Rather, "[t]he public policy which [the Court] must follow is that which instructs our courts to enforce an insurance policy 'as written' and not seek 'to make a better contract for either of the parties' than that which they chose to make for themselves." *Hebela v. Healthcare Ins. Co.*, 370 N.J. Super. 260, 272 (App. Div. 2004) (quoting *Kampf v. Franklin Life Ins. Co.*, 33 N.J. 36, 43 (1960)).

Accordingly, the Court declines to find coverage based on either public policy or the reasonable expectations of the insured. Because the Court finds that the Virus Exclusion is both enforceable and bars coverage of Plaintiffs' claims, Plaintiffs have failed to state a claim for declaratory relief. *See N&S Restaurant*, 2020 WL 6501722, at *5.

## IV. CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss is **GRANTED**. Plaintiffs' Complaint is dismissed in its entirety.

DATED: February 10, 2021  /s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge

---

[9] No New Jersey court has yet ruled on the question of whether application of virus exclusions in the context of the COVID-19 pandemic is contrary to public policy. While the issue was raised in *Mattdogg*, the court enforced the virus exclusion and did not reach the issue of public policy. *See* 2020 WL 7702634, at *2–3, 4.